IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JENNIFER JONES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-3011 |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

RICHARD MILLS, United States District Judge:

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jennifer Jones seeks judicial review of an adverse decision on her claim for disability insurance benefits under Sections 216(I) and 223 of the Social Security Act.

Pending are the Plaintiff's motion for summary judgment and Defendant's motion for summary affirmance.

## I.    BACKGROUND

Plaintiff Jennifer Jones alleges disability since May 13, 2010, when she was 35-years old.  The Plaintiff, who has an eighth-grade education, has a combination of medical problems including Chiari malformation resulting in chronic headaches, depression and memory loss.  Her last long-term job was as a CNA at the Illinois

Veterans Home, a position she held from 1999 to 2010.  None of her jobs after that lasted more than a couple of weeks.

On July 21, 2016, following the parties' joint motion to remand, this Court remanded the action to the Social Security Administration in order for the Administrative Law Judge (ALJ) to proceed through the sequential disability evaluation process as appropriate and issue a new decision.  On October 11, 2017, Administrative Law Judge Kelly Wingate Campbell issued a Decision denying the Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act, respectively.

The ALJ found that the Plaintiff has the following severe impairments: a history of surgery for Chiari malformation, headaches/dizziness, cervical degenerative disc disease, bilateral carpal tunnel, neuropathy, hypertension, obesity, depression/adjustment/mood disorder, generalized anxiety, a borderline personality disorder and a posttraumatic stress disorder.  However, no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

The ALJ's Decision found the Plaintiff was "not disabled" at step five of the sequential evaluation process.  Vocational expert Bob Hammond testified that Plaintiff's past work included CNA (DOT 355.674-014 classified as medium, performed at heavy SVP 4) and cook (DOT 313.361-014, medium SVP 7).  The ALJ

presented the following hypothetical: whether an individual of Plaintiff's age, education and work experience limited to medium work, never climb ladders, ropes or scaffolds or be exposed to unprotected heights or hazardous work environments, but could occasionally climb stairs or ramps; could frequently balance, occasionally stoop, kneel, crouch or crawl and could frequently handle or finger; avoid no more than occasional reaching overhead with the right upper extremity; avoid concentrated exposure to noise and bright flashing lights or flickering lights, as well as vibrations, fumes, dust or pulmonary irritants; would be limited to simple work related decisions and could have frequent contact with supervisors and coworkers, but only occasional contact with the public and would be off task 10% of the work day.

The vocational expert testified past work is eliminated but the hypothetical person could perform the following jobs: kitchen helper (DOT 318.687-010, 164,000 jobs nationally); cleaner I (DOT 310.687-014, 121,000 jobs nationally); both are medium SVP 2. At the light level, such a person could perform these jobs: injection molder (DOT 556.685-038, 121,000 jobs nationally); press operator (DOT 614.685-014, 127,000 jobs nationally); both are SVP 2. If an individual were off task 20%, it would eliminate all jobs as would missing two or more days of work a month. These jobs would not allow a person to lie down during any point of the

shift. Anything more than two additional breaks of more than six minutes each would eliminate all jobs.

The ALJ relied on the testimony of the vocational expert that a person of Plaintiff's age, education, vocational profile and residual functional capacity could adjust to occupations such as molder and press operator.

Because the Plaintiff did not seek further review, the ALJ's Decision became the final Decision of the Commissioner. *See* 20 C.F.R. § 404.955, 404.984, 416.1455, 416.1484.

On appeal, the Plaintiff contends that the ALJ failed to give proper weight to the opinion of treating neurosurgeon, Dr. Julian Lin. She also alleges the ALJ failed to give proper weight to consider a proper residual functional capacity.

The Commissioner contends that the ALJ reasonably evaluated the medical opinion evidence and reasonably evaluated the Plaintiff's alleged symptoms. Moreover, substantial evidence supports the ALJ's residual functional capacity.

## II.      STANDARD OF REVIEW

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner. *See Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence" is defined as "such relevant evidence as

4

a reasonable mind might accept as adequate to support a conclusion." *Yurt v. Colvin*, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although the task of a court is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." *Id*. at 856-57. The ALJ "must build a logical bridge from the evidence to his conclusion, but he need not provide a complete written evaluation of every piece of testimony and evidence." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (internal citations and quotation marks omitted).

## III.   DISCUSSION

<u>ALJ's evaluation of medical evidence</u>

The Plaintiff alleges the ALJ failed to give controlling weight to the opinion of Dr. Lin. While treating physicians are "usually entitled to controlling weight, *see* 20 C.F.R. § 404.1527(c)(2); SSR 96-2p,[1] an ALJ may discredit the opinion if it is inconsistent with the record." *Winsted v. Berryhill*, 923 F.3d 472, 478 (7th Cir. 2019). An ALJ must provide "good reasons" for discounting the opinion of a treating physician. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). When not entitled to controlling weight, an ALJ assigns a medical opinion appropriate weight

---

[1] The treating-physician rule was eliminated for claims filed after March 27, 2017, *see* 20 C.F.R. § 404.1520c (2017), but still applies to the Plaintiff's claim.

after considering relevant factors, such as the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the supportability of the opinion, including medical signs and laboratory findings; whether the opinion was consistent with the record as a whole, and the specialization of the treating relationship. *See* 20 C.F.R. § 404.1527(c).

The Plaintiff notes that on September 12, 2012, Dr. Julian Lin completed a medical source statement which indicated that Plaintiff has limitations preventing her from lifting/carrying less than ten pounds, standing or walking less than two hours in an 8-hour workday or sitting less than six hours in an 8-hour workday. The Plaintiff notes the first ALJ gave no weight to Dr. Lin's opinion and alleges that the second ALJ makes the same error.

Regarding the Plaintiff's postural limitations, Dr. Lin's medical source statement indicated that Plaintiff is able to do the following frequently, or one-third to two-thirds of an 8-hour workday: climbing—ramps/stairs/ladder/rope/scaffold, balancing, kneeling, crouching, crawling, stooping.

Dr. Lin found that Plaintiff has impairments that limited her sight, hearing and speaking but noted no environmental limitation.

On December 23, 2011, after seeing the Plaintiff for a follow-up after Chiari decompression, Dr. Lin noted "[s]he has effort related weakness in her grips, biceps

and triceps." TR 587. On January 17, 2012, as part of the Plaintiff's physical exam, Dr. Lin noted "[p]atient has no focal motor weakness or sensory loss and that her gait is unremarkable." TR 582.

The ALJ's Decision addresses why she affords no weight to Dr. Lin's opinion:

> The undersigned gives no weight to the opinion of treating neurosurgeon Julian Lin, M.D. Exhibit 28. Though a treating source is generally given controlling weight, his opinion is internally inconsistent. For example, he opined that the claimant can lift and carry less than 10 pounds, stand/walk less than 2 hours and sit more than 6 hours in an 8-hour workday yet he also opined that she could frequently climb ramps, stairs, scaffolds, and ropes and balance, kneel, crouch, crawl, and stoop. Dr. Lin further opined that the claimant had impairments that affected her sight, hearing, and speaking but noted no environmental limitations. Additionally, his statement is inconsistent with his own treatment notes. For example, his records show that the claimant's speech is clear that she has no focal motor weakness or sensory loss and that her gait is unremarkable. . . . He also noted that the claimant had "effort related" weakness in her grips, biceps, and triceps.

TR 905-06.

The Plaintiff notes that the ALJ does not discuss a number of the relevant factors. Moreover, the opinion comes from the treating neurosurgeon, not merely a family doctor, that performed the Chiari malformation repair on Plaintiff as well as carpal tunnel surgery. The Plaintiff notes he has treated her since before July 2011. Dr. Lin has seen her for follow-up of her surgery and ongoing issues post-surgery. In September 2013, Dr. Lin noted that Plaintiff complained of a "persistent headache with some dizziness and shoulder pain," describing the headache as "unstoppable, holocranial." TR 774. The CT scan did not show any acute findings. Dr. Lin

thought that Plaintiff's persistent headache could be related to her high blood pressure and recommends continued treatment with a neurologist.

The Plaintiff claims the record as a whole included documentation of her headaches. On August 14, 2012, the Plaintiff visited the ER complaining of nausea, vomiting, weakness and headache. In October 2013, the Plaintiff received an occipital nerve block for headaches with only mild improvement. On January 7, 2014, the Plaintiff complained of headaches that were described as classic migraines. On April 5, 2014, the Plaintiff visited the ER with another migraine.

In 2015 and 2016, the Plaintiff complained of extensive headaches and neck pain, sometimes with high blood pressure. In November 2015, neurologist Dr. Douglas Sullivant noted "Occipital nuchal origin of her headaches is not surprising. She has a Chiari malformation status post decompression." TR 1619.

The Plaintiff notes that Dr. Lin was not contacted to clarify any portion of his opinion that the ALJ believed to be inconsistent. Like the first ALJ, the second ALJ gives "partial weight" to non-treating Dr. Mitra's report of November 2010, and Dr. Mack's report of February 2012, neither of whom had Dr. Lin's opinion to review. The Plaintiff contends it is error to give any weight to those reports and none to the treating neurosurgeon.

The Court agrees with the Plaintiff that the ALJ's articulated reason for discounting Dr. Lin's opinion is insufficient. The ALJ's Decision does not address some of the factors noted in the applicable regulation. There is no discussion of length of treatment, frequency of examination, the nature and extent of treatment relationship and or specialization of the treating physician. Even though the ALJ found certain internal inconsistencies within Dr. Lin's medical source statement, that is not a sufficient basis to discount the treating physician's opinion without at least touching on some of the other factors. This is particularly true if Dr. Lin's treatment records otherwise provide support for his opinion. "If an ALJ does not give a treating physician's opinion controlling weight, the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009). Because the ALJ did not consider most of those factors, the Court will remand the matter so that the appropriate factors can be considered in order to appropriately weigh Dr. Lin's opinion.

Ergo, the Motion of Plaintiff Jennifer Jones for Summary Judgment [d/e 11] is ALLOWED in part.

The Motion of Defendant Commissioner of Social Security for Summary Judgment [d/e 13] is DENIED.

The Commissioner's Decision is Reversed under sentence four of 42 U.S.C. § 405 and the action is remanded to the Commissioner, in order to give appropriate weight to Dr. Lin's opinion, and if necessary, revise the Plaintiff's residual functional capacity assessment.

Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk will substitute Andrew Saul, Commissioner of the Social Security Administration, as the proper Defendant.

The Clerk will enter Judgment and terminate this case.

ENTER: September 27, 2019


    FOR THE COURT:

                                    /s/ *Richard Mills*
                                    Richard Mills
                                    United States District Judge